## McALLASTER vs. EDGERTON ET AL.

## Opinion delivered October 5, 1901.

*1. Parties—Receiver—Trespassers.*

> Plaintiff had recovered a judgment which was declared to be a lien upon the improvements on certain land in the Cherokee Nation, and a receiver had been appointed to collect the rents from said lands and apply the proceeds to payment of the judgment. Trespassers took possession of such lands, claiming the right to settle thereon as Cherokee citizens; and the receiver applied for an order removing said trespassers. The trespassers were allowed to answer and later filed a motion to have the receiver discharged, which was allowed by the court. *Held*, that it was error for the court to allow these trespassers to be made parties to the suit, as they had no interest therein, and to discharge the receiver and leave them in possession.

*2. Cherokee Laws—Not Enforced in U. S. Courts.*

> A Cherokee law providing that a citizen who marries a non-citizen and removes from the Cherokee Nation is not entitled to hold lands in said Nation, will not be enforced by the United States courts in the Indian Territory, since such enforcement is prohibited in Section 26 of Act of June 28, 1898, known as the "Curtis Bill."

Appeal from the United States court for the Northern district. John R. Thomas and William M. Springer, Judges.

Action by Ella P. McAllaster against R. C. Edgerton and others. From orders allowing Sam Adair, M. F. Mayfield, and George Dickey to become parties defendant to the suit after judgment, and on their motion discharging the receiver appointed to collect the judgment, the plaintiff appeals. Reversed.

On the 19th day of October, 1899, there was filed the special report of John H. Shufeldt, receiver in this case, which is as follows: "Now comes J. H. Shufeldt, receiver in the above-entitled cause, and makes this special report to the court, and says that he rented the premises for the present year to one Dick Rainey, and to no other person or persons; that about the latter part of August or fore part of September, 1899, one Sam Adair and one M. F. Mayfield and one Geo. Dickey moved onto the premises without any right or authority whatever from the undersigned, and without his knowledge or consent, and are now in possession of the whole premises, and are defying the authority of the receiver to control the premises and collect the rents; that said Adair is the brother-in-law of the defendant Manahan, who died about September 10, 1899, and that his widow now lives near the premises, on an adjoining farm, and that said widow Manahan is a sister of said Sam Adair, and that said Mrs. Manahan on October 10th came to this receiver in person, and said that her brother, said Adair, had sent word by her that he did not want to come to town to see the receiver, because there would surely be trouble, and that he had not much money to spend over the place, but had plenty of power and lead; that Adair is claiming the rents on the place, and is ordering the tenants to gather the corn and turn it over to him; and that the corn is being gathered by said Mayfield and Adair in defiance of the receiver's control and authority. And the undersigned asks the aid of the court in the premises, to have all of said parties apprehended and removed from the premises, to the end that he may be permitted to control the premises against the trespassing and unlawful and forcible possession of the said Adair, Mayfield, and Dickey. J. H. Shufeldt, Receiver." Upon the filing of said report the court ordered the said Adair, Mayfield, and Dickey "to be forthwith arrested and brought before the court, to be dealt with according to law." On the

(46)

—— day of December, 1899, the said Adair, Mayfield, and Dickey were brought before the court, and asked leave to file answer to the said special report of the receiver and to the attachment proceedings against them, which was granted; but said parties were required to enter into recognizance in the sum of $500 for their appearance, and to abide the further orders of the court. On the 22d day of December, 1899, the said Adair, Mayfield, and Dickey made answer in writing, which answer, however, is not set out in the transcript, and also, by leave of the court, filed a motion to discharge the receiver, to which motion appellant (plaintiff below) excepted. The said Adair, Mayfield, and Dickey were discharged, upon their answer, from custody in the contempt proceedings, and then they asked to be made parties defendant, to which application appellant objected. His objection was overruled by the court, to which ruling of the court appellant duly excepted. "And said Adair, Mayfield, and Dickey filed their motion to discharge the receiver in this cause, to which filing of motion, and all proceedings thereunder and in accordance therewith, said plaintiff objected, which objection was overruled by the court, and duly excepted to by the plaintiff at the time." Afterwards, and on same day, the motion to discharge the receiver came on to be heard upon the special report of the receiver, and upon an agreed statement of facts, and no other testimony was offered. The agreed statement of facts is as follows: "A suit was filed at law (No. 1,402) in this court on April 6, 1892, by Ella P. McAllaster, against R. C. Edgerton, in which judgment was rendered against the defendant on July 1, 1892. That this suit in equity (No. 1,651) was filed on December 17, 1892, after a return of nulla bona upon the execution, under the provisions of the act of May 2, 1890, by Ella P. McAllaster against R. C. Edgerton, and that Frank Manahan was made a party to said suit on December ——, 1895, and that judgment was rendered against the defendants in this court on January 17, 1896. That, when the suit

in equity was filed, R. C. Edgerton was recognized as a citizen of the Cherokee Nation by adoption by marriage. That the plaintiff is a citizen of the United States, and a resident of the state of Kansas. That Frank Manahan was a citizen of the Cherokee Nation by marriage, and was recognized as such up to the time of his death in September, 1899. That Susan Manahan is a citizen of the Cherokee Nation by blood. That in February, 1895, R. C. Edgerton married a citizen of the United States, residing in Kansas, and has never resided in the Indian Territory since. That shortly after this marriage he sold the place in controversy to Frank Manahan. That on January 17, 1896, John Shufeldt was appointed receiver for the property by this court, and has been ever since, and is now, acting in such capacity, not having been discharged. That said Shufeldt leased all the land each year, including the year 1899, to I. N. Rainey, who was in possession of the land until June, 1899, and who lived in the house on said place into which Samuel Adair moved. That the land was never leased to Frank Manahan by the receiver, and has not been in the possession of said Manahan since January 17, 1896. That Samuel Adair, M. F. Mayfield, and G. W. Dickey are bona fide citizens of the Cherokee Nation, and residents thereof, and were such in March, 1899. That in March, 1899, Samuel Adair, being in search of a proper place for allotments for himself and wife and minor children, was informed that Frank Manahan had been the owner of and in the possession of the improvements known as the 'Edgerton Place,' being the same mentioned and described in the judgment in this case of January 17, 1896, but that by reason of the passage of the act of congress approved June 28, 1898, he (Manahan) could no longer hold the same, because in excess of his share of the lands of the Cherokee Nation, and that he had given up all claim thereto. That Samuel Adair about March 28, 1899, or March 29, 1899, took up about 720 acres of said improvement, and shortly thereafter transferred possession of 320 acres of said

720 to M. F. Mayfield, who immediately transferred posses-
sion of 80 acres thereof to G. W. Dickey, but no money has
been paid by any of the parties.  That all of said parties
(Samuel Adair, M. F. Mayfield, and G. W. Dickey) took
said lands in good faith for the purpose of selecting them as
allotments for themselves, their wives, and their minor
children, and that neither of them has taken more than he
is entitled to as the proportionate share of himself, his wife,
and his minor children in the lands of the Cherokee Nation.
That neither of them has any other improvement or holding
whatever upon the lands of. the Cherokee Nation.  That
Samuel Adair has been in possession of the lands which he
took upon the said Edgerton improvements since about
March 28, 1899, and Mayfield and Dickey have been in pos-
session of the portion they are holding since about April 1,
1899.  That Samuel Adair has been actually residing on his
portion since the latter part of May or the first of June,
1899, and Mayfield and Dickey have been actually residing
upon their respective portions since early in August, 1899.
That at the time Mayfield purchased possession from Sam
Adair there was a renter upon a portion of the land he got,
and the said renter has cultivated thereon about 15 acres of
corn, upon which he raised about 400 bushels.  That, prior
to the time said corn was gathered, G. W. Dickey purchased
all the interest of the renter in said corn, and he and the
said Mayfield gathered the same, and all of it, except a small
portion which they have used for feeding their own stock,
is still on the place.  That there is on Samuel Adair's por-
tion about 200 bushels of rent corn, and he personally culti-
vated about 8 acres, from which he got very little.  That
none of the corn now on the place was raised by Adair, May-
field, or Dickey personally.  That neither Samuel Adair,
Mayfield, or Dickey ever had any knowledge of said place
having been or being in the hands of a receiver until about
November 1, 1899.  That said Edgerton improvement is, and
has been for some years past, wholly inclosed by fencing,

and embraces an amount of land exceeding 1,000 acres, the exact amount being unknown. That the plaintiff herein furnished R. C. Edgerton and his first wife the money with which he made and purchased the said farm and improvements. That the judgment herein rendered on January 17, 1896, has not been paid or satisfied, no payment having been made except the rents as collected by the receiver each year." The judgment above referred to, rendered January 17, 1896, was for $5,168.28, in favor of plaintiff against defendant Edgerton, and the same was "declared and adjudged a first and superior lien on the premises known and described." Said judgment also provided as follows: "It is further ordered and decreed that said premises shall be placed in the charge and control of a receiver, who shall rent the same and collect the rents therefrom for the purpose of having the proceeds applied to the payment and satisfaction of said plaintiff's judgment, or that the said premises shall be sold, at the option of said plaintiff or said defendant, upon application to this court for an order to sell said premises for said purpose, according to law. It is further ordered and adjudged that said defendant Frank Manahan has no right or interest in and to said property and farm land, except such as are junior, inferior, and subject to the rights therein of said plaintiff. It is also ordered and decreed that John Shufeldt, Esq., of Elenapah, Indian Territory, be and is hereby appointed receiver over said premises, and that he shall be entitled to take charge thereof upon giving a bond in the sum of $2,000, with sureties to be approved by the clerk of this court." The death of Frank Manahan was suggested, and the same was revived in the name of Susan Manahan, his widow, and the hearing proceeded, and the court ordered that the motion to discharge the receiver be sustained, and that the receiver be discharged from his duties and proceedings as such receiver, to which appellant excepted, and prayed an appeal to this court which was granted.

*S. M. Porter*, for appellant.  *William T. Hutchings,
Preston C. West*, and *Nathan A. Gibson*, for appellees.

TOWNSEND, C. J, The appellees insist the judgment
below should be affirmed for the reason that rule 10 of this
court has not been complied with, in that the appellant has
filed with her brief no specifications of error.  This omission
seems to have been cured, for we find with the brief of ap-
pellant the following specifications of error:  ''First.  The
trial court erred in allowing the defendants Adair, Mayfield,
and Dickey to be made party defendants in this cause over
the objection of the plaintiff, because said parties had no
interest whatever in the cause of action except such as they
had unlawfully usurped from the receiver and the plaintiff.
Second.  The trial court erred in sustaining the motion to
discharge the receiver upon the showing made in the agreed
statement of facts.''  From the facts disclosed by this record,
we are at a loss to understand how the court below arrived
at its conclusion as shown by its judgment.  The' suit was
originally filed on December 17, 1892, under the provisions
of the act of May 2, 1890, and final judgment was rendered
on January 17, 1896, and as a part of said judgment the
amount of the recovery was declared to be a first lien upon
the property of the defendant Edgerton, and John Shufeldt
was appointed receiver by the same judgment.  The said re-
ceiver was in possession, leasing out the property under the
order and direction of the court, when, as it appears, on or
about March 28 or 29, 1899, one Samuel Adair "took up
about 720 acres of said improvement," and shortly after-
wards transferred a part of it to defendant Mayfield, who
transferred a part of his to defendant Dickey.  The re-
ceiver, in a special report filed October 19, 1899, informed
the court of the action of these trespassers, and asked the
aid of the court to remove them.  The court, instead of pro-
tecting the possession of its receiver, discharged these tres-
passers from custody, in the proceedings first taken to pun-

ish them for contempt, and then, over the objection of appellant, allowed them to be made parties to the suit, when the record fails to disclose any interest whatever on the part of these trespassers in the original controversy, and the only pretense being that they were hunting for some land, claiming to be Cherokee citizens, and found it convenient to seize the land in the custody of the court through its receiver. That the court should allow such trespassers to become parties in a suit where they were entire strangers, and at their request discharge its receiver and leave them in possession of the land, which they had taken by force from the possession of the court's receiver, is, we must confess, a matter of some astonishment. As a method of procedure for a court of equity, it is anomalous, to say the least, as it is undoubtedly a travesty upon justice. The defendants seek to justify the order discharging the receiver because defendant Edgerton had married a citizen of the United States in February, 1895, although recognized as a citizen of the Cherokee Nation by adoption when the suit was filed, and they quote the Cherokee statutes upon that subject, and upon the effect of his removal to Kansas. These statutes cannot be enforced in the United States courts, since the act of June 28, 1898, became a law. See Section 26: "That on and after the passage of this act the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory." Section 26, Act June 28, 1898, (55th Cong. 2d Sess.). It appears from the agreed statement of facts "that the plaintiff herein furnished R. C. Edgerton and his first wife the money with which he made and purchased the said farm and improvements." Still, this is of no consequence to these trespassers, who are in pursuit of land for allotment. The case is reversed and remanded, with directions to reinstate the receiver, and proceed with the collection of said judgment as the court shall deem proper.

GILL, CLAYTON, and RAYMOND, JJ., concur.