SCHOOL DISTRICT OF THE CITY OF FERNDALE v. ROYAL OAK TOWNSHIP SCHOOL DISTRICT NO. 8.

1. PARTIES—INTERVENTION—COMMON LAW.
   At common law no right of intervention existed.

2. SAME—INTERVENTION—JUDICATURE ACT.
   No right of intervention existed in Michigan prior to adoption of the judicature act, which provides for intervention in actions either at law or in equity (3 Comp. Laws 1929, §14019).

3. SCHOOLS AND SCHOOL DISTRICTS—ANNEXATION—PARTIES. ·
   Petitioners, residents and taxpayers in area annexed to home rule city but which had belonged in another school district than that comprising most of the city, were not necessary parties to suit between the school districts for adjudication of question as to whether the annexed lands became subject to the jurisdiction of the city school district or in the disposition of the other issues between the two school districts (3 Comp. Laws 1929, § 14019).

4. MUNICIPAL CORPORATIONS—REPRESENTATION OF ITS CITIZENS IN LITIGATION RELATING TO MUNICIPAL MATTERS.
   Ordinarily a municipality represents the citizen in litigation relating to municipal matters.

5. PARTIES—INTERVENTION—LIBERAL CONSTRUCTION OF STATUTE.
   The statute governing the right to intervene is remedial and, as such, entitled to a liberal construction to effectuate the intents and purposes thereof (3 Comp. Laws 1929, § 14019).

6. MUNICIPAL CORPORATIONS—PARTIES—INTERVENTION.
   When a municipal corporation refuses to protect the interests of those concerned, citizens are entitled to intervene (3 Comp. Laws 1929, § 14019).

7. SAME—DEFENSES—INTERESTED TAXPAYERS—INTERVENTION.
   A person, merely because he is a taxpayer, has no such interest in litigation to which a municipality is a party as will entitle

* Continued from Vol. 292.

him to intervene, but if the municipality, when sued, refuses
to set up a material defense, taxpayers directly interested in
the result are entitled to intervene and plead such defense
(3 Comp. Laws 1929, § 14019).

8. PARTIES—INTERVENTION—DELAY.

Parties who would otherwise be granted leave to intervene are
denied consideration where they sit by and allow litigation to
proceed without requesting leave to enter the case; and inter-
vention is generally denied where it would delay the trial or
the adjudication (3 Comp. Laws 1929, § 14019).

9. SAME—INTERVENTION—DELAY—REOPENING FOR FURTHER EVI-
DENCE—CHANGE OF POSITION—COMPLICATING CASE—MULTIFARIOUS-
NESS.

Generally intervention is not a proper proceeding where it will
have the effect of retarding principal suit, delaying trial of the
action, requiring case be reopened for further evidence, chang-
ing the position of the original parties, or of complicating the
case and producing a multifariousness of parties and causes of
action (3 Comp. Laws 1929, § 14019).

10. SAME—INTERVENTION—DILIGENCE—DELAY—TRIAL.

An intervener must be diligent and not guilty of any unreason-
able laches after knowledge of the suit; he cannot delay the
original parties, retard their trial, nor render nugatory any
trial which has already begun though it has not resulted in a
judgment or other decision (3 Comp. Laws 1929, § 14019).

11. SAME—INTERVENTION AFTER FINAL JUDGMENT—DISCRETION OF
COURT—REVIEW.

Intervention may be granted after final judgment in the discre-
tion of the court if it does not relate to the merits of the
question, will not delay the main action, will not necessarily
unsettle any judgment entered therein, and if some relief may
still be granted in furtherance of justice without violating the
rules of *res judicata*, but generally the discretion of the court
will be exercised against granting application to intervene then,
and, if so exercised, will not be reviewed by an appellate court
(3 Comp. Laws 1929, § 14019).

12. SCHOOLS AND SCHOOL DISTRICTS—ANNEXATION TO CITY—DIS-
MISSAL OF PETITION TO INTERVENE.

In suit between city and township school districts to determine
whether portion of latter district's land annexed to city became
a part of the city school district, order of trial court dismissing
petition to intervene, filed by residents and taxpayers of an-

nexed land after trial court had filed opinion holding such land remained in township school district, does not preclude such petitioners from securing their rights to proper school facilities as electors in township school district (3 Comp. Laws 1929, § 14019).

13. PARTIES—INTERVENTION—DISCRETION OF COURT.

The granting of leave to intervene is discretionary with the trial court (3 Comp. Laws 1929, § 14019).

14. SCHOOLS AND SCHOOL DISTRICTS—ANNEXATION—INTERVENTION—DISCRETION OF COURT.

In suit by city school district against township school district to determine whether land from latter district annexed to city became a part of the city school district, it was not an abuse of discretion on the part of the trial court to deny petition to intervene, filed by residents and taxpayers of annexed area after trial court had filed opinion holding land remained in township school district after hearing on merits of case which had been pending more than four and one-half months before the hearing of the case, petitioners had knowledge of the proceedings and hearing and did not appeal from the final decree (3 Comp. Laws 1929, § 14019).

15. APPEAL AND ERROR—DISCRETIONARY ORDERS—MANDAMUS.

Review of discretionary orders is by appeal in the nature of mandamus.

Appeal from Oakland; Doty (Frank L.), J. Submitted January 16, 1940. (Docket No. 63, Calendar No. 40,678.) Decided April 1, 1940.

Bill by School District of the City of Ferndale, a municipal corporation, against Royal Oak Township School District No. 8 and other municipal corporations to determine the legal status of certain land, for an accounting and other relief. On petition of Charles L. Kepley and others to intervene. From order denying right to intervene, Charles L. Kepley and others appeal. Affirmed.

*Robert C. Baldwin* (*Claude H. Stevens,* of counsel), for defendant School District No. 8 of the Township of Royal Oak.

*Bernard E. Konopka* and *Walter M. Nelson,* for petitioners to intervene.

McALLISTER, J.   On April 1, 1918, Ferndale was incorporated as a village.   It included within its borders a part of the Royal Oak township school district No. 9, a graded school district.   The territory of the school district, in course of time, was organized into several different municipalities.   The district continued as a graded school district until 1927, when the school code of 1927, Act No. 319, Pub. Acts 1927 (2 Comp. Laws 1929, § 7094 *et seq.* [Stat. Ann. § 15.1 *et seq.*]), was adopted.   At the time the village of Ferndale was incorporated, it annexed to its easterly border a strip of land which was included in Royal Oak township school district No. 8.   In April, 1927, the village of Ferndale became a home-rule city.   In February, 1928, the city of Ferndale annexed additional lands which were comprised in Royal Oak township school district No. 8.   After these annexations of territory, the electors of school district No. 9 voted to become a third class school district known as the "School District of the City of Ferndale."   No steps were ever taken to place any part of school district No. 8 under the jurisdiction of the school district of the city of Ferndale, excepting that at an informal meeting of the school boards of the two districts it was denied that any part of the territory annexed by the village of Ferndale, and subsequently by the city of Ferndale, was a part of the school district of the city of Ferndale.   In September, 1938, the school district of the city of Ferndale filed a bill of complaint in the circuit court for the county of Oakland against Royal Oak township school district No. 8 and others, praying that the court determine the

legal status, for school district purposes, of the lands which had been so annexed. It was claimed that by virtue of certain statutes (2 Comp. Laws 1929, §§ 7219,* 7220, 7222, 7236 * [Stat. Ann. §§ 15.181, 15.182, 15.184, 15.198]) the annexations, by the village of Ferndale and the city of Ferndale, of territory comprised within school district No. 8 automatically brought such land into the school district of the city of Ferndale when it was organized as a third class district under the school code. After a full hearing, the circuit court held that the annexed lands did not become a part of the school district of the city of Ferndale but remained a part of school district No. 8 of the township of Royal Oak, and dismissed plaintiffs' bill of complaint. Appellants sought to intervene in the suit, and, upon dismissal of their petition, asked for review of the court's order denying intervention.

The bill of complaint was filed September 6, 1938. Answer was filed by Royal Oak township school district No. 8 on October 21, 1938. The case was tried, and the court filed its opinion determining the issues on January 26, 1939. It was not until 19 days later, after the filing of the opinion and after notice of settlement of decree had been filed, that appellants filed their petition to intervene.

It appears that in 1928 the Grand Trunk Railway Company sought to vacate certain streets and alleys in the city of Ferndale in order to construct freight yards and switching tracks. These tracks were to be constructed on an embankment made necessary by a grade separation. The railway company entered into an agreement whereby it paid school district No. 8 the sum of $18,000 in consideration of

---

* 2 Comp. Laws 1929, §§ 7219, 7236, were amended by Act No. 52, Pub. Acts 1931 (Comp. Laws Supp. 1940, §§ 7219, 7236).—REPORTER.

permission to build the embankment and tracks. The embankment was erected across a corner of the school district, with the result that the citizens residing in the triangular piece of territory were cut off from direct access to the other part of school district No. 8, and school children in such isolated portion of the district were obliged to travel a much more circuitous route around the embankment than had been the case previously. It appears to have been assumed that the school district would use the funds received from the railway company to furnish more convenient and adequate school facilities in the triangle; and a building was purchased for such purposes and has been used for a school within the so-called isolated territory; but it appears that facilities are inadequate and that the school is overcrowded. The residents of the district have apparently been unable to secure adequate school facilities through action of the school board. In their petition to intervene, appellants set forth that they "have at all times depended upon the various public bodies in charge of furnishing school facilities, and for several years following 1928 these petitioners and their neighbors awaited appropriate action by the responsible public bodies to furnish school facilities for the children of the Campbell Park triangle, and for a number of years petitioners did not appreciate the fact that said Royal Oak township school district No. 8 did not furnish fair or adequate school facilities, and they were not advised and did not know or suspect that they were not legally within the jurisdiction of the said school district No. 8 in the matter of public school facilities until some years later when the total disregard of the school requirements of the said triangle was persisted in and it came to be suspected by some of the petitioners that they had been and were legally entitled to the facilities of the public schools of the city

of Ferndale and of the school district of the city of Ferndale, parties hereto, and continuously, persistently and repeatedly thereafter these petitioners and their neighbors have petitioned, interviewed, sought, and beseeched the responsible public officials for adequate school facilities for the said triangle, and for the right to be included in and regarded as a part of the school district of the city of Ferndale and entitled to the use of the school facilities thereof, as more fully appears by the records of the various boards of education and the common councils and by voluminous clippings from and notices in the public press for the last six or seven years, and petitioners and their neighbors have asserted, petitioned for and pressed their rights and claims without ceasing and to the best of their ability as ordinary citizens and laymen, and that petitioners' rights have been repeatedly and steadily denied for reasons and influences not understood by them.''

The court held that it could not grant the petition to intervene unless it came to a different conclusion in the case, and that it ''had given that question very careful consideration and could see no way or reason for changing its former opinion.'' Pursuant to the opinion, a decree was entered April 28, 1939. No appeal from such decree has been taken by plaintiff or by appellants. Error is assigned upon refusal of the trial court to grant the petition for intervention.

It is provided in 3 Comp. Laws 1929, § 14019 (Stat. Ann. § 27.663):

''In an action either at law, or in equity, anyone claiming an interest in the litigation may, at any time, be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the main proceeding.''

''Under the common law no right to intervention existed; and, in Michigan, none existed prior to the

adoption of the judicature act. The statute provides for intervention in actions either at law or in equity.'' 3 Searl's Michigan Pleading and Practice, p. 354, § 1360.

With regard to rights of appellants to intervene, it may be said that they were not necessary parties to the adjudication by the court of the legal question as to whether the annexed lands became subject to the jurisdiction of the school district of the city of Ferndale, or in the disposition of the other issues between the two school districts.

Ordinarily a municipality represents the citizen in litigation relating to municipal matters. In *Kennedy* v. *Town of Normal,* 359 Ill. 306 (194 N. E. 576), where a property owner brought suit to enjoin a municipality from opening an alley which the latter claimed to have accepted after a common-law dedication, it was held that property owners desiring the opening of the alley should not be allowed to intervene and answer the bill, as their rights were fully represented by the municipality and the pleadings did not involve or determine their private rights.

In *Skinner* v. *City of Slater,* 159 Mo. App. 589, 592 (141 S. W. 733), a party brought suit to enjoin defendant city from maintaining a sewer on the ground that it was a nuisance. Upon application of another to intervene, the court said:

"After the cause had been heard and taken under advisement by the court, George J. Dyer, one of the parties who was using the sewer, made application to be made a party to the proceeding. The court dismissed his application and this action of the court is assigned as error.

"In the first place, we do not believe that a proper regard for the usual and ordinary method of court procedure would permit a party to interpose in a case on the ground that his rights would be inciden-

tally affected in the litigation, after the case had been heard and submitted to the court for judgment.

"Secondly, it was not necessary that he should be made party to the suit had he made timely application for the purpose."

In *City of Grand Rapids* v. *Consumers Power Co.,* 216 Mich. 409, 411, it is said:

"In litigation brought by a city the taxpayer is heard through the accredited representative of the city—the city attorney. If he is misrepresented, if the city attorney is not as able as counsel of his own choosing might be, if the litigation is ill advised or unfortunate, the remedy is the forum of the people, —the selection of another city attorney. Those chosen either directly or indirectly by the people to conduct a litigation for the city rather than the taxpayer himself must have control of such litigation. Petitioner must find something more substantial than his right as a taxpayer before he can come into a case brought by the city."

However, the statute governing the right to intervene is to be liberally construed. "This act, by its terms, is declared to be remedial and, as such, entitled to a liberal construction to effectuate the intents and purposes thereof." *Detroit & Northern Michigan Building & Loan Ass'n* v. *Oram,* 200 Mich. 485, 492. And when a municipal corporation refuses to protect the interests of those concerned, citizens are entitled to intervene. In Rev. 6 McQuillin on Municipal Corporations (2d Ed.) p. 951, it is said:

"A person, merely because he is a taxpayer, has no such interest in litigation to which a municipality is a party, it has been held, as will entitle him to intervene. But if the municipality, when sued, refuses to set up a material defense, taxpayers directly interested in the result are entitled to intervene and plead such defense."

Parties who would otherwise be granted leave to intervene are denied consideration where they sit by and allow litigation to proceed without requesting leave to enter the case; and intervention is generally denied where it would delay the trial or the adjudication.

"It is the general rule that an intervention is not a proper proceeding where it will have the effect of retarding the principal suit, or delaying the trial of the action, or requiring that the case shall be reopened for further evidence, of changing the position of the original parties, or of complicating the case and producing a multifariousness of parties and causes of action." 47 C. J. p. 108.

In *Forsyth* v. *American Maize Products Co.*, 59 Ind. App. 634, 637 (108 N. E. 622), where a suit had been on docket for two years before intervention was sought, it was held that the petition for intervention which was filed on the day the court announced its finding in the main suit was properly denied. The court said:

"Where one seeks to intervene, who is not a necessary party under our statute, the trial court may exercise its discretion and unless there is a clear abuse of such discretion, no error is committed in denying the right to intervene. An intervener must be diligent and any unreasonable delay after knowledge of the suit will justify the court in refusing to allow him to intervene, where no satisfactory excuse is shown for the delay and the intervener is not a necessary party to a full and complete adjudication of the rights involved in the controversy."

The time within which intervention may be brought is thoroughly reviewed in an annotation appearing in 123 Am. St. Rep. 294. It is there said:

"Practically all the statutes upon the subject and all rulings of the court where not controlled by statute are to the effect that the intervener must be diligent and not guilty of any unreasonable laches after knowledge of the suit, that he has no right to delay the original parties nor retard their trial, nor render nugatory any trial which has already begun, though it has not resulted in a judgment or other decision; and finally that the application to intervene may be denied because of the appellant's laches or because it may retard the original parties or change their position for the worse. * * *

"The question sometimes arises whether an intervention may be after final judgment. If it does not relate to the merits of the question, as where it is a proceeding to determine the validity of an attachment or whether specified property is subject thereto, the intervention need not delay the main action nor necessarily unsettle any judgment entered therein. Hence, in such case there is no reason why an intervention may not be after, as well as before, final judgment: *Simmons Clothing Co.* v. *Davis,* 3 Ind. Terr. 379 (58 S. W. 655); *Parham & Co.* v. *Potts-Thompson Liquor Co.,* 127 Ga. 303 (56 S. E. 460). Even in other cases, unless restrained by some statute, the court may authorize an intervention after final judgment, wherein, notwithstanding such judgment, some relief may still be granted in furtherance of justice without violating the rules of *res judicata; Petty* v. *Hayden Brothers,* 115 Iowa, 212 (88 N. W. 339); *In re Ayrault's Will,* 81 Hun, 107 (30 N. Y. Supp. 654); *McNair* v. *Pope,* 104 N. C. 350 (10 S. E. 252); but generally the discretion of the court will be exercised against granting so tardy an application, and if so exercised, will not be reviewed by the appellate court: *Witherspoon* v. *Swift,* 112 Ga. 689 (37 S. E. 976); *McAllaster* v. *Edgerton,* 3 Ind. Terr. 704 (64 S. W. 583); *Hunt* v. *McDonald,* 124 Wis. 82 (102 N. W. 318)."

In *Zeitinger* v. *Hargadine-McKittrick Dry Goods Co.*, 298 Mo. 461 (250 S. W. 913), the court said:

"The very nature of an intervention which we have defined as in the civil law to be an action by which a third party becomes party in a suit pending between others * * * requires by its express terms timeliness of action on the part of the intervener. * * * The general trend of the decisions on this subject (timely intervention) will be found reported in notes to *Brown & Sons* v. *Saul*, a Louisiana case, 4 Martin (N. S.), 434 (16 Am. Dec. 175, 177), and to *Walker* v. *Sanders*, a Minnesota case, 103 Minn. 124 (114 N. W. 649, 123 Am. St. Rep. 276, 280). They are to the effect that an intervention in the exercise of an intelligent discretion by the trial court, will not be granted where the intervener has been guilty of laches after knowledge of the pendency of the suit, if any part of the same is thereby retarded, rendered nugatory or changes the position of the original parties to their detriment, although the original action has not resulted in a judgment. * * * Only under circumstances where such intervention may be granted in furtherance of justice and in no wise affects injuriously the original litigants will it be granted after final judgment."

In *Watkins* v. *Donnell*, 189 Mo. App. 617 (175 S. W. 280), the court said:

"Appellant was not a party to the proceeding, but sought to intervene therein, *i. e.*, to become, by leave of court, a party thereto for the protection of a right or interest alleged to be affected thereby. The general rule is that one coming in as an intervener must take the case as he finds it, and cannot delay the trial of the cause; and that intervention comes too late after trial begins, and *a fortiori* after judgment. (See 17 Am. & Eng. Enc. of Law [2d Ed.], p. 185; 11 Enc. Pl. & Pr. 503, 510.)"

In *Gibson* v. *Ferrell,* 77 Kan. 454, 457 (94 Pac. 783, 784), the court, in discussing the conduct of a petitioner for intervention, said:

"So far as the motion discloses the applicant may have been sitting by during the entire period the suit was pending, watching the progress of events, waiting to see what would develop, and only after the end had been reached and he found the result to be unsatisfactory did he conclude to try his own hand. The motion having been addressed to the discretion of the court, its ruling cannot be reversed without a clear showing that it abused its authority. Manifestly the applicant withheld altogether too much for this to be said."

In *Ritchie* v. *Railway Co.,* 14 Ky. Law Rep. 831 (21 S. W. 641), it was held that the purchaser of a railroad who stands by during the preparation of a case by the receiver against another road for freight charges and allows the same to be submitted without any assistance or suggestion as to the strongest issues cannot, after a year, and just as judgment is about to be rendered, complain because of the court's refusal to substitute him as plaintiff under petition setting up issues that would necessitate a reopening of the case. See, also, *United States Trust Co. of New York* v. *Railroad Co.,* 110 C. C. A. 270 (188 Fed. 292).

In the instant case appellants, according to their petition, for many years subsequent to 1928 had awaited action by the school districts on the questions involved. The bill of complaint filed by the school district of the city of Ferndale had been pending more than four and a half months before the hearing of the case, and there are strong inferences to be drawn that the petitioners had knowledge of the proceedings and the hearing, as they appear to have been among the most active parties seeking a

disposition of the matter in favor of plaintiff school district. During all of this time they doubtless relied upon the bill of complaint of the school district of the city of Ferndale and the conduct of the case by the attorneys for the school district. There is no showing that they requested an appeal from the final decree. They were represented in the case by the school district for the city of Ferndale, and no complaint is made of any neglect of their rights by this school district.

Appellants' difficulties with regard to school facilities do not arise out of the fact that they are not within the school district of the city of Ferndale; and they are not deprived of school facilities because of the determination of the trial court that the annexations by the city of Ferndale do not automatically bring the lands in question within the jurisdiction of the school board of the city of Ferndale. Whatever hardship the appellants suffer is due to the fact that school district No. 8 does not supply proper facilities. The school district received the payment from the railway company for this purpose; and if it is not properly discharging its duty in this regard, it should in all fairness be required to do so. But the fact that it may not properly carry out this necessary function is not a tenable ground for the inclusion of this part of school district No. 8 in the school district for the city of Ferndale. Appellants may be in the position of residents of a school district for whom adequate school facilities are not furnished. If this be the case, their remedy is that of citizens under similar circumstances in other districts, regardless of any question of dispute as to the boundaries of school districts. The order of the circuit court dismissing appellants' petition to intervene does not preclude them from securing their rights to proper school facilities as electors in school district No. 8.

In view of the fact that the granting of leave to intervene is discretionary with the trial court, we are unable to conclude, under the foregoing circumstances, that there was an abuse of discretion by the court in refusing intervention. Review of discretionary orders is by appeal in the nature of mandamus. See *Hettche* v. *Oakland Circuit Judge,* 290 Mich. 453. Considering the appeal as a petition in mandamus proceedings, it must be denied.

The order of the trial court is affirmed. No costs allowed.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, and BUTZEL, JJ., concurred with McALLISTER, J. CHANDLER and WIEST, JJ., concurred in the result.