*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEAIRRA JACKSON,

        Plaintiff-Appellee,

and

ADVANCED PAIN SPECIALISTS, PLLC,

        Intervening Plaintiff,

v

CITY OF DETROIT,

        Defendant-Appellee,

and

PHYSIO-DYNAMICS LLC, MICHIGAN
THERAPEUTIC SOLUTIONS, and
METROWAY TRANSPORTATION LLC,

        Appellants.

UNPUBLISHED
October 8, 2019

No. 343124
Wayne Circuit Court
LC No. 16-001859-NF

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

        Appellants, Physio-Dynamics, LLC (PD), Michigan Therapeutic Solutions (MTS),[1] and
Metroway Transportation, LLC (MW), appeal as of right the trial court order approving

---

[1] In the caption of the brief on appeal, appellants placed Michigan Therapeutic Solutions in
parenthesis. In their lower court response to the motion for equitable apportionment of the
settlement, it was alleged that Physio-Dynamics LLC did business as Michigan Therapeutic

-1-

equitable apportionment of settlement proceeds and dismissal of the case without granting appellants' motion to intervene in the action for first-party no-fault benefits. We affirm the trial court's order denying appellants' motion for intervention, but remand for correction of the order approving the settlement to the extent it precludes healthcare and service providers from enforcing any contractual rights with plaintiff.

## I. BASIC FACTS

On February 11, 2016, plaintiff, Keairra Jackson, filed a one-count complaint against defendant, City of Detroit, seeking recovery of personal protection insurance (PIP) benefits pursuant to the no-fault insurance act, MCL 500.3101 *et seq*. Apparently, plaintiff allegedly suffered injuries when she was a passenger on a city bus that was involved in an accident with a third-party. She alleged that defendant unreasonably and unlawfully neglected and refused to pay PIP benefits pursuant to the act, an assertion that defendant denied.

During the course of plaintiff's litigation, numerous entities took measures to advise of debts owed by plaintiff for services rendered and sought to be kept apprised of the status of plaintiff's litigation. On August 22, 2016, Advanced Pain Specialists, PLLC, filed a motion to intervene in the litigation as a medical service provider that treated plaintiff, and the request for intervention was granted on September 14, 2016. On December 21, 2016, Michigan Center for Physical Therapy, Inc filed a notice of lien for medical expenses and requested that it be advised of any settlement proceedings in order to preserve its rights as a lienholder payee. On April 18, 2017, an appearance was filed on behalf of Michigan Spine and Pain and requested notice of any proceedings related to settlement. Finally, on August 9, 2017, Get Well Medical Transport filed a notice of lien and requested notice of any settlement proceedings and to be included in any settlement proceeds.

When the litigation had been pending for nearly two years, on January 18, 2018, appellant PD filed a notice of lien claiming entitlement to proceeds received by plaintiff for its provision of physical and occupational services to her. Unlike the liens filed by other entities, PD sought a lien against property or funds received by plaintiff and did not request to be kept apprised of settlement negotiations. Additionally, this notice did not submit patient billing statements to delineate the services provided, the date of the service, and the charge.

On January 19, 2018, PD filed an emergency motion to intervene. In this pleading, it was alleged that appellant PD had learned of and been granted the right to participate in a facilitation to resolve plaintiff's lawsuit, but the parties' refused to negotiate PD's bills. Therefore, PD alleged that the emergency request for intervention was necessary to protect its interests, and it would not unduly delay the litigation.

On February 6, 2018, plaintiff filed a motion for equitable apportionment of settlement proceeds because she had resolved her first-party no-fault claim for $55,000. Plaintiff requested

Solutions, but appellants did not present their lower pleadings and appellate brief in accordance with that representation.

payment of costs ($2,247.91) and attorney fees ($17,584.03) to her counsel, and $2,000 for plaintiff to obtain services and resolve Medicaid liens. It was requested that the remaining $33,168.06 be apportioned to the medical providers pursuant to MCL 500.3112. Plaintiff requested that Get Well Medical Transport be excluded "from this settlement as they have their own representation."

On March 6, 2018, PD filed a response in opposition to the motion for equitable apportionment of settlement proceeds. PD alleged that it did business as Michigan Therapeutic Solutions (MTS), and plaintiff owed an outstanding balance of $43,195, yet the proposed apportionment would only award it $6,440. Counsel for PD also represented lien holder Metroway Transportation LLC (MW) that was owed $50,367.10, yet plaintiff only offered to pay less than 15% of the bill. PD and MW acknowledged receipt of liens and assignments from plaintiff. The response asserted that PD and MW did not acquiesce to the proposed apportionment, but objected to it and would "pursue whatever legal remedies to make it whole." Despite this assertion to pursue all available legal remedies, there is no indication that appellants filed their own suit to enforce any liens and assignments obtained from plaintiff.

On March 9, 2018, the trial court heard oral argument regarding the request for distribution of settlement proceeds and for intervention. Counsel for plaintiff requested that the trial court set forth an equitable dispersion in light of the $55,000 settlement pursuant to MCL 500.3112, but acknowledged that MW and PD objected to being apportioned in the distribution. The trial court noted that it had not received the emergency motion to intervene,[2] but denied intervention because it was "late" in light of the pendency of the action since February 11, 2016. When counsel for appellants continued to argue that the apportionment was not equitable, the trial court stated that appellants' counsel did not have standing to which she responded, "I know. But I have to still put the fight in there on my client's [sic] behalf." It is noteworthy that counsel for PD and MW did not request to be removed from the distribution, but only objected to the *amount* of the distribution. Before this Court, appellants challenge the denial of the motion to intervene and the equitable apportionment in light of the liens and assignments.

## II. INTERVENTION

First, appellants contend that the trial court improperly denied their request for intervention. We disagree. A trial court's decision regarding a motion to intervene is reviewed for an abuse of discretion. *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). An abuse of discretion occurs when the trial court selects an outcome that is outside the range of principled outcomes. *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153-154; 908 NW2d 319 (2017).

MCR 2.209 governs intervention and provides:

---

[2] The court accepted the representation by counsel that the motion had been filed and attributed the lack of receipt to the "new system."

**(A) Intervention of Right**.  On timely application a person has a right to intervene in an action:

(1) when a Michigan statute or court rule confers an unconditional right to intervene;

(2) by stipulation of all the parties; or

(3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**(B) Permissive Intervention**.  On timely application a person may intervene in an action

(1) when a Michigan statute or court rule confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**(C) Procedure**.  A person seeking to intervene must apply to the court by motion and give notice in writing to all parties under MCR 2.107.  The motion must

(1) state the grounds for intervention; and

(2) be accompanied by a pleading stating the claim or defense for which intervention is sought.

Intervention is defined in the civil law as "an action by which a third party becomes a party in a suit pending between others." *Ferndale Sch Dist v Royal Oak Twp*, 293 Mich 1, 12; 291 NW 199 (1940) (citation and quotation omitted).  It requires the intervener pursue the application to intervene in a timely manner.  *Id*.  Generally, one entering an action as an intervener must take the case as he finds it and cannot delay the trial of the cause.  *Id*.  "[A]n intervention in the exercise of an intelligent discretion by the trial court, will not be granted where the intervener has been guilty of laches after knowledge of the pendency of the suit, if any part of the same is thereby retarded, rendered nugatory or changes the position of the original parties to their detriment, although the original action has not resulted in a judgment."  *Id*.  Where a motion discloses that "the applicant may have been sitting by during the entire period the suit was pending, watching the progress of events, waiting to see what would develop, and only after the end had been reached and he found the result to be unsatisfactory did he conclude to try his own hand.  The motion having been addressed to the discretion of the court, its ruling cannot be

reversed without a clear showing that it abused its authority." *Id*. at 13 (citation and quotation omitted).

"The rule for intervention should be liberally construed to allow intervention where the applicant's interests may be inadequately represented." *Neal v Neal*, 219 Mich App 490, 492; 557 NW2d 133 (1996). However, intervention may be improper where it would have the effect of delaying the action or producing a multifariousness of parties and causes of action. *Id*. at 493. Although the court rule itself does not contain a requirement regarding standing, caselaw concludes that the petitioners must also demonstrate standing to intervene in litigation. *Karrip v Cannon Twp*, 115 Mich App 726, 732; 321 NW2d 690 (1982) ("Although [petitioners] have a basis to intervene as of right, they must also demonstrate that they have standing to assert their claims.").

In the present case, plaintiff began treating with PD in September 2015, and on September 24, 2015, plaintiff signed an acknowledgment that she was personally responsible for charges for the services provided by PD. Additionally, she agreed to grant PD a lien against any judgments or settlements for all services rendered. In June 2017, plaintiff signed assignments of her right to collect payment of no-fault benefits to PD and an acknowledgment of lien. In this lien agreement, plaintiff recognized that she remained personally liable for PD's charges for services. Thus, PD took steps to ensure that it had an avenue for monetary collection for the services rendered to plaintiff. Yet, it never filed a contract action arising from the liens and assignments and request that the action be consolidated with this case to preserve their rights, irrespective of any ruling regarding intervention.

Despite appellants' inaction, the history of this case demonstrates that interested entities gave notice of their claims to ensure payment. Plaintiff filed her first-party no-fault action against defendant on February 11, 2016. As delineated in the facts, between August 2016 and August 2017, four different entities provided notice of outstanding payments owed by plaintiff such that they sought to intervene or preserve a lien and be apprised of, or participate in, any resolution of plaintiff's claim. Yet, appellants did not file a notice of lien until January 18, 2018, and this notice did not request to be kept apprised of and included in settlement negotiations. Additionally, on January 19, 2018, PD filed an emergency motion to intervene and asserted, for the first time, that its interests would not be protected because it was "kicked out" of the most recent facilitation. Thus, appellants did not express an interest in the litigation until it had been pending for nearly two years, and it was in the resolution stages in light of the parties recently held second facilitation.

Under the circumstances, the trial court did not abuse its discretion by denying appellants' motion to intervene because the decision was within the range of principled outcomes. *Mitchell*, 321 Mich App at 153-154; *Auto-Owners Ins Co*, 284 Mich App at 612. In *Ferndale Sch Dist*, 293 Mich at 13, our Supreme Court noted that an applicant was not permitted to sit by during the entire period that the lawsuit was pending, watch the progress of events, wait to see what would occur, and only at the end, "try his own hand." Indeed, PD provided services to the injured plaintiff and took steps to secure payment through liens and assignments, but did not formally seek to intervene in the litigation. Instead, when the case was in the resolution stage by proceeding through multiple facilitation hearings, PD and Metroway filed an emergency

motion to intervene. In light of the delay in seeking to intervene in the lawsuit, the trial court's decision to deny intervention was appropriate under the circumstances.

## III. EQUITABLE APPORTIONMENT APPROVAL

Next, appellants contend that the trial court improperly allowed plaintiff to settle a claim that she did not possess. Generally, an issue is preserved for appellate review if it is raised, addressed, and decided by the trial court. *Mouzon v Achievable Vissions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). Appellants allege that the trial court improperly approved the settlement despite their assignments and liens. However, the trial court did not allow appellants to intervene in the litigation and consequently did not address the validity of the assignments and the liens. Rather, the court's distribution of the settlement award was made pursuant to MCL 500.3112. Therefore, this issue is not preserved for appellate review. More importantly, appellants did not object to *being included* in the distribution, but rather, the objection raised on the record was to the *amount* of the distribution. Thus, appellants never argued in the trial court that the assignments barred inclusion in the distribution or sought to be completely excluded from the distribution to pursue the assignments. Appellants seek to raise an issue for the first time on appeal that was never brought to the attention of the trial court.

Furthermore, the trial court did not err in granting the request for equitable distribution of the settlement award because appellants waived this issue by failing to raise it in the trial court. After plaintiff moved for equitable distribution of the settlement proceeds, PD and MW filed a response that solely objected to the amount of apportionment and noted that the goal of settlement would not be achieved if the distribution received court approval because of their lien and assignment interests. Indeed, PD and MW announced their intention to "pursue whatever legal remedies to make it whole[.]" Accordingly, appellants never asserted in the trial court that the terms of the assignments precluded plaintiff from pursuing an equitable distribution and that she no longer possessed the claim. A party must properly preserve an issue by raising it in the trial court, and the failure to timely raise an issue waives appellate review of the issue. *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008). This claim of error does not provide appellant with appellate relief.[3]

## IV. STANDING

Lastly, although appellants contend that the trial court improperly held that they lacked standing, the substance of their argument protests the trial court's order to the extent it extinguished their contractual rights. On the latter point, we agree. Because the language of the trial court's order extinguished claims of entities that were not parties to the litigation and violated the principles articulated in *Covenant Medical Ctr, Inc v State Farm Mut Auto Ins Co*,

---

[3] The parties do not dispute that MCL 500.3112 provides that where there is doubt regarding the proper person to receive benefits, an insurer, claimant, or other interested person may apply to the circuit court for a determination and that the court's ruling was in accordance with the statutory authority.

500 Mich 191; 895 NW2d 490 (2017), we remand to the trial court for correction of the final order.

The trial court's order of distribution provides as follows:

> This matter having come before the Court on Plaintiff's Motion for Equitable Apportionment of Settlement Proceeds and the Court being fully advised in the premises;
>
> IT IS HEREBY ORDERED that Plaintiff's Motion for Equitable Apportionment of Settlement Proceeds is GRANTED for the reasons stated on the record.
>
> ***IT IS FURTHER ORDERED that the equitable apportionment of settlement proceeds is full and final payment for all services rendered by the providers listed below, resulting from the automobile accident of April 17, 2015 and is entered as follows***: [Emphasis added.]

[A listing of the parties to the distribution and the amount received followed].

In *Covenant*, an insured was injured in a motor vehicle accident, and the plaintiff, Covenant Medical Center, a healthcare provider, treated the injured person on three occasions. The plaintiff sent the defendant, the injured person's no-fault insurer, the bills for the medical treatment, but the defendant refused to pay. Ultimately, the injured person filed suit against the defendant for PIP benefits, and the claim was settled with the injured person executing a broad release that it encompassed all allowable no-fault expenses, including medical bills. Thereafter, the plaintiff, healthcare provider, filed suit against the defendant no-fault insurer. *Covenant*, 500 Mich at 196-197.

Our Supreme Court examined the language of the no-fault act "to conclude that a healthcare provider possesses no statutory cause of action against a no-fault insurer for recovery of PIP benefits." *Id*. at 200.

> In sum, a review of the plain language of the no-fault act reveals no support for plaintiff's argument that a healthcare provider possesses a statutory cause of action against a no-fault insurer. This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges. However, a provider simply has no statutory cause of action of its own to directly sue a no-fault insurer. [*Id*. at 217-218 (footnotes omitted).]

The *Covenant* Court also expressly noted that its conclusion did not "alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40.

Indeed, in *Miller v Citizens Ins Co*, 490 Mich 904, 904; 804 NW2d 740 (2011),[4] the Court addressed an attorney fee dispute arising from the no-fault act and held that the plaintiff was responsible for her attorney fees pursuant to the American rule. *Id*. However, the Court also clarified the benefits that were payable from the no-fault act because it appeared that the lower courts had extinguished a contractual right:

> Of concern to this Court is that the circuit court's order, and the Court of Appeals' affirmance, could be mistakenly interpreted as extinguishing the DMC's contractual right to payment for its services. We wish to make clear that this is not the case. No-fault benefits are "payable to or for the benefit of an injured person . . . ." MCL 500.3112. In this case, through settlement, the benefits were paid to plaintiff, and her attorney asserted an attorney's charging lien over the settlement proceeds. Thus, the effect of this was only to settle claims as between the insurer, plaintiff, and her attorney. The circuit court's order of dismissal pursuant to the settlement agreement did not have the effect of extinguishing the DMC's right to collect the remainder of its bill from plaintiff. Such a result could not have been achieved without an explicit waiver, or at least unequivocal acquiescence, by the DMC, which was not obtained. [*Id*.]

In light of *Miller*, we need not address whether appellants had standing. Rather, pursuant to *Miller*, the trial court's order of equitable apportion of settlement proceeds improperly held that it constituted "full and final payment for all services rendered by the providers listed below, resulting from the automobile accident of April 17, 2015[.]" Instead, the court's order solely resolved all claims between plaintiff, her attorney, and defendant City of Detroit. It did not foreclose the healthcare providers from pursuing their contractual rights with plaintiff and any liens or assignments executed between the providers and plaintiff. Thus, the broad language in the court's distribution order inappropriately concluded that the providers received full and final payment without regard to their contractual relationship with plaintiff as obtained through liens and assignments. Accordingly, we remand for correction of the final order to comport with the *Miller* order and *Covenant* decision.

Affirmed, but remanded for correction of the final order. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron

---

[4] Although *Miller* was an order of the Supreme Court, such orders constitute binding precedent when the rationale can be understood. *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002).