# STATE OF MICHIGAN

# COURT OF APPEALS

---

KYLE OOSTDYK, a Minor, by his Conservator,
DAWN BUDD,

          Plaintiff-Appellee,

and

SPECTRUM HEALTH HOSPITALS,
SPECTRUM HEALTH CONTINUING CARE,
MARY FREE BED REHABILITATION
HOSPITAL, and GOLDEN RULE INSURANCE
COMPANY,

          Intervening Plaintiffs-Appellees,

v

AUTO OWNERS INSURANCE COMPANY,

          Defendant-Appellant.

UNPUBLISHED
December 30, 2014

No. 317221
Kalamazoo Circuit Court
LC No. 2010-000277-NF

---

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Defendant, Auto Owners Insurance Company, appeals as of right a judgment entered in plaintiff's favor following a jury trial in this action to recover personal injury protection (PIP) no-fault insurance benefits. We affirm. Defendant also challenges the trial court's decision to grant post-verdict motions to intervene filed by Spectrum Health Hospitals, Spectrum Health Continuing Care, Mary Free Bed Rehabilitation Hospital (collectively "the hospitals"), and Golden Rule Insurance Company (Golden Rule). We affirm.

-1-

## I. Facts

Kyle Oostdyk had an epileptic seizure while riding on a public school bus. The incident was recorded by cameras on the bus. When the bus driver first discovered Kyle, he was lying across his seat with his head and a portion of his torso extended across the aisle to the adjacent seat. Kyle's face was pointing toward the front of the bus and he was having convulsions. After the bus driver resumed driving the bus, Kyle fell partially off of the adjacent seat so that part of his body was hanging down head-first off the seat. Kyle's head was on the floor, under a seat, and his neck was twisted so that he was facing toward the back of the bus. When the bus arrived at the school, there was no obvious sign that Kyle was breathing. He had no pulse, his face was blue, and his lips were purple. He was not convulsing. CPR was performed and Kyle was transported to the hospital. Ultimately, Kyle suffered an anoxic brain injury which is permanent and catastrophic.

PIP benefits were sought from defendant under Kyle's father's automobile insurance policy and the claim was denied. Thereafter, Kyle, by his conservator, filed this first-party no-fault insurance action. Defendant moved for summary disposition twice, generally arguing that the claim was not compensable under the no-fault act because Kyle's injury was not causally connected to the operation or use of the bus as a motor vehicle. The trial court denied both of defendant's motions.

Before trial, a stipulation and order was entered in which the parties agreed that (1) if called as a witness, Kyle's medical providers would testify that certain bills submitted to defendant "were actually incurred" and "were authentic, reasonable and necessary;" (2) these bills would be admitted into evidence without calling witnesses to authenticate them or testify that they "were reasonable in amount and were for necessary services;" (3) defendant could contest the amounts of the medical bills "as being unreasonable and unnecessary to the jury," within the confines of the trial court's previous ruling regarding "the collateral sources of payment;"[1] (4) defendant did not waive "the issue of the amounts being actually incurred pursuant to *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 543; 637 NW2d 251 (2001) and *Nortwick v Auto-Owners Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued April 15, 2003 (Docket No. 237310);" and (5) the parties agreed that defendant would "have a hearing post-trial to determine a reduction of the amounts submitted to the jury . . . to the extent that the Court determines that either the provider(s) of services and care have accepted prior payment as payment in full, or providers have agreed through participation agreements to adjust and reduce amounts in the bills such that the full amounts were not incurred . . . ."

---

[1] Plaintiff filed a motion in limine seeking to preclude testimony under the collateral source rule that Kyle's medical expenses have been paid by Medicaid. The trial court granted plaintiff's motion to the extent plaintiff sought to preclude evidence that suggested plaintiff's liability on medical bills was limited to the amounts paid by other sources, and accepted by the medical providers. That is, the total amounts billed by medical providers could be placed into evidence and the court would "sort out later whether there is any reduction from that amount."

At trial, plaintiff's theory of the case included that the structure, layout, and movement of the bus caused Kyle's injury. In support of this theory, plaintiff presented testimony from an injury biomechanics expert, Dr. Paul Christopher Ivancic. He testified that Kyle's inverted body position, with his head on the floor of the bus, caused his airway to be cut off, resulting in positional asphyxia. That is, the weight of Kyle's torso and the twisting of his neck caused his trachea to occlude when his head became wedged between the floor of the bus and the seat. Dr. Ivancic further testified that Kyle's head was displaced downward from the seat to the floor as a result of the bus accelerating after the bus driver resumed driving the bus. And because of the loading or force vibrations caused by the bus, Kyle was unable to move out of the position. Dr. Ivancic testified that the bus caused Kyle's anoxic brain injury in the following ways: (1) the height of the bus seat relative to the floor, the space between Kyle's seat and the adjacent seat on which he fell, and the permanent structure of the bus seat legs increased the force on Kyle's body because of the angle resulting from the inverted position, (2) the vibrations and bumps on the bus, which could be seen on the video by the movements of other people on the bus, contributed to the asphyxia because of the continuous force it exerted on Kyle, and (3) the acceleration and deceleration of the bus caused extra force on Kyle's head, neck, and torso.

Dr. Madeline Chadehumbe, Kyle's treating neurologist before this incident, testified that Kyle's seizure did not cause the anoxic brain injury; rather, the positioning and resulting blockage of his airway after he fell from the bus seat to the floor caused the anoxic brain injury. Dr. Chadehumbe acknowledged that the emergency room doctor diagnosed Kyle with status epilepticus (continuous seizure), but she indicated that it was later determined Kyle was not having a seizure by that point in time. Further, Dr. Chadehumbe testified that it was less likely for Kyle to have suffered a status epilepticus seizure because that was not the nature of his seizures in the past. But, she testified, drugs given to Kyle in the emergency room could have possibly stopped any seizure he might have been having when he arrived, and cardiac arrest, which can cause brain damage due to lack of oxygen, can follow seizures.

Dr. Brien Smith, Kyle's current physician who specializes in epilepsy and clinical neurophysiology, testified that Kyle's airway was compromised because of the position he was in after he partially fell from the bus seat to the floor. He also testified that it was less likely for Kyle to have suffered a status epilepticus seizure because that was not the nature of his seizures in the past. Dr. Smith explained that if Kyle's eyes were deviated upward and to the right in the emergency room as noted by the emergency room physician, it can be evidence of global brain damage [like an anoxic brain injury], not just evidence of a current seizure.

Defendant's theory of the case was that Kyle's injury was not causally connected to the operation or use of the bus as a motor vehicle. In support of this theory, defendant presented testimony from a biomechanical engineer, Dr. Lawrence William Schneider. He testified that Kyle's fall across the aisle to the adjoining seat was not caused by the movement of the bus but by his seizure. Dr. Schneider opined that, according to basic physics, the acceleration of the bus after the driver resumed driving would cause Kyle's body to move further back in his seat, not forward. And the acceleration of the bus was so minimal that it was likely Kyle did not move at all. Further, Kyle fell to the floor because of his convulsions, not because of vibrations on the bus. And he could not move his head because of his convulsions, not because his head was wedged between the seat and the floor. However, Dr. Schneider agreed that, because of his body

-3-

position, Kyle's internal organs would have had a downward force on his diaphragm and torso which would have exerted force on his head and neck.

Dr. Glen Ackerman, a neurologist, testified that Kyle fell to the adjoining seat as a result of a seizure and then partially fell to the floor of the bus because of the continued seizure activity—not because of the movement of the bus. Further, the oxygen deprivation and resulting brain damage could have been caused by fluid in the lungs (pulmonary edema) or the aspiration of drool during the seizure. And oxygen levels in the blood may go down during different types of seizures, which can cause cardiac arrest. An individual having a seizure can unexpectedly die from a pulmonary or respiratory problem that causes breathing to stop. Dr. Ackerman opined that the emergency room physician diagnosed status epilepticus because Kyle's eyes were looking up and all the way to the right. Although a generalized anoxic brain injury can cause the eyes to move up and to the right, Dr. Ackerman noted that later, in the pediatric ICU, Kyle's eyes were back at midline after being given antiseizure medicine which led him to believe that Kyle was still seizing when he was admitted to the emergency room.

Dr. Eugene Rontal, an otolaryngologist and defendant's witness, testified that Kyle could not have suffered from positional asphyxia when he was partially off the seat because his head was hyperextended and the position would have opened his airway. Further, Kyle's trachea, larynx, Adam's apple, or voice box would have shown signs of injury if his airway was closed by pressing on something hard [like the base of the bus seat leg] and there was no evidence in the record to demonstrate such an injury. However, plaintiff's rebuttal witness, Dr. Werner Spitz, demonstrated that the trachea is quite flexible. Further, he testified that he reviewed the videotape and concluded that Kyle was in a position to cause asphyxia, resulting in brain damage.

The jury returned a verdict in plaintiff's favor. Thereafter, plaintiff filed a motion for taxation of costs, interest, attorney fees, and entry of final judgment. Defendant opposed the motion, arguing that entry of judgment was premature because the trial court had to determine the appropriate reductions or set-offs resulting from Kyle's medical expenses being paid by Medicaid and Golden Rule (a secondary commercial health insurance payor), which were accepted by his medical providers as payment in full. Defendant argued that it should not have to pay medical bills that were paid by Golden Rule and Medicaid because they were not outstanding at trial. But if it had to do so, defendant argued, it should only have to pay the reduced amounts the medical providers accepted from other payers, and not the full amount billed.

The hospitals then filed a motion to intervene, arguing that they erroneously accepted payment from Medicaid and Golden Rule for medical services provided to Kyle under the mistaken belief that no-fault benefits were not available. The trial court granted the hospitals' motion to intervene, reasoning that Medicaid was entitled to repayment of the money it had paid for Kyle's medical bills—leaving Kyle responsible for the bills—and that the hospitals clearly had an interest in the medical claims. Golden Rule also filed a motion to intervene, which the trial court granted.

Thereafter, defendant filed a motion for summary disposition under MCR 2.116(C)(7) and (10), arguing that the hospitals agreed to accept payment from Golden Rule and Medicaid.

Thus, at the time of trial, plaintiff was only entitled to recover the amounts actually incurred prior to trial—which was the amount accepted by the hospitals as payment in full and not the amount actually charged. Defendant further argued that intervening plaintiffs' new claims did not relate back to the date plaintiff's complaint was filed. And, because Golden Rule paid plaintiff's obligation to the medical providers only Golden Rule, not plaintiff, could assert a claim of subrogation against defendant, but such claim was not timely asserted.

The trial court denied defendant's motion for summary disposition under MCR 2.116(C)(7), reasoning that intervening plaintiffs were not asserting claims under the no-fault act; rather, pursuant to the jury verdict, they sought reimbursement for the services provided. The court further stated:

> Contrary to [defendant's] argument, [defendant] is not entitled to pay the medical providers only those amounts they accepted from Medicaid, Golden Rule, or other payers. To accept [defendant's] argument would defeat the no-fault act's goal of prompt payment, since there would be an incentive to deny payment and reap the benefit of a lower payment amount made by someone else.

> The effect of the jury's decision is to reset the clock on the payment of [Kyle's] medical bills. It is as though those bills had never been paid by others. What Medicaid or Golden Rule or anyone else paid to satisfy [Kyle's] bills is irrelevant to determining the reasonableness of the charges, and the amount should not be reduced based on any of [defendant's] legal arguments. [Defendant] waived its right to challenge the reasonableness of the charges when it did not raise the issue of reasonableness at trial. Although there is a dollar amount attached to the jury's verdict, [defendant] can negotiate with the medical providers to accept a lesser amount in full satisfaction or audit the bill under its separate agreements with the providers. [Kyle] wants the bills paid so he is not liable.

> The intervening parties are not making claims against [defendant]. Rather, the intervening parties claim a share of the medical expenses awarded by the jury to [Kyle]. In essence, they are defending the verdict from [defendant's] efforts to reduce the amount. [Kyle] does not oppose the intervening parties' entitlement to the portion of the judgment equal to the amount billed for healthcare services provided (in the case of Mary Free Bed, Spectrum Hospitals, and Spectrum continuing Care) or the amount paid on [Kyle's] behalf under a healthcare insurance policy (in the case of Golden Rule). MCR 2.116 simply does not apply to [defendant's] legal arguments seeking a reduction in the amount of the verdict.

Subsequently, the trial court entered judgment in plaintiff's favor. This appeal followed.

## II. Summary Disposition Motions

Defendant argues that the trial court erred in denying both of its motions for summary disposition because Kyle's injury was caused by a seizure and not by the operation or use of the

bus as a motor vehicle as required under MCL 500.3105 and *Thornton v Allstate Ins Co*, 425 Mich 643, 662; 391 NW2d 320 (1986). We disagree.

## A.  Standard of Review

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). When deciding a motion brought under MCR 2.116(C)(10), we view the evidence in a light most favorable to the opposing party to test the factual adequacy of a complaint. *Id*. If no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. *Id*. at 116. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "[T]he court is not permitted to assess credibility, or to determine facts on a motion for summary judgment." *Oade v Jackson Nat'l Life Ins Co*, 465 Mich 244, 265; 632 NW2d 126 (2001) (quotation marks and citation omitted). This Court also reviews de novo as a question of law issues of statutory construction. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013).

## B.  Operation or Use of Bus as a Motor Vehicle

Pursuant to MCL 500.3105(1), "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." In *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012), our Supreme Court explained that § 3105(1) of the no-fault act sets forth two threshold causation requirements for the recovery of PIP benefits:

> First, an insurer is liable only if benefits are "*for* accidental bodily injury . . .." "[F]or" implies a causal connection. "[A]ccidental bodily injury" therefore triggers an insurer's liability and defines the scope of that liability. Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident.

> Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries "aris[e] out of" or are caused by "the ownership, operation, maintenance or use of a motor vehicle . . .." It is not *any* bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle. [*Id*. (citation omitted).]

Defendant argues that its motions for summary disposition should have been granted because Kyle's injury did not arise out of the operation or use of the bus as a motor vehicle. A school bus is a dual purpose vehicle and the no-fault act only provides for "coverage for a dual purpose vehicle's motor-vehicle function, not its non-motor-vehicle function." Defendant claims that Kyle's injury "arose from the school bus's safekeeping function rather than its motor vehicle function, [thus], there is no PIP coverage available under the no-fault act." However, plaintiff presented evidence that Kyle's injury occurred on the bus, because it was moving, and while he was being transported to school. As our Supreme Court has held, "moving motor vehicles are

-6-

quite obviously engaged in a transportational function." *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 221; 580 NW2d 424 (1998).

Contrary to defendant's argument on appeal, the facts of this case are not similar to those of *Thornton*, 425 Mich 643. In that case, a taxicab driver was shot by his passenger. *Id*. at 646. The taxicab driver was not entitled to PIP benefits because the motor vehicle was merely the situs of the armed robbery. *Id*. at 660. The *Thornton* Court held that "[t]he involvement of the car in the injury should be directly related to its character as a motor vehicle." *Id*. at 659 (citation and quotation marks omitted). And that "the injury could have occurred whether or not [the plaintiff] used a motor vehicle as a motor vehicle." *Id*. at 660. In this case, plaintiff presented evidence that Kyle was injured on the bus, because it was moving, and while he was being transported to school.

Further, defendant's reliance on *McKenzie*, 458 Mich 214, is misplaced. In that case, our Supreme Court held that the plaintiff was not entitled to PIP benefits because at the time the plaintiff sustained injury, the motor vehicle was being used as sleeping accommodations and not for a transportational purpose. *Id*. at 226. Here, at the time Kyle was injured, the bus was being operated as a bus and was being used to transport him to school.

Likewise, defendant's reliance on *Pacific Employers Ins Co v Mich Mut Ins Co*, 452 Mich 218, 220-221; 549 NW2d 872 (1996), and *Indiana Ins Co v Auto-Owners Ins Co*, 260 Mich App 662; 680 NW2d 466 (2004), is misplaced because, in this case, plaintiff presented evidence that Kyle was injured on the bus, because of its movement, and while the bus was being used to transport him to school. That is, the bus was engaged in its "motoring" or transportational function when Kyle was injured. Thus, defendant's claim that the bus was being used for a "safekeeping function" rather than for its transportational function at the time Kyle was injured was properly rejected by the trial court.

### C. Injury Arising Out of Operation or Use

Defendant also argues that its motions for summary disposition should have been granted because there was no genuine issue of material fact that Kyle's injury was caused by a seizure and not by the operation or use of the bus. That is, Kyle's seizure caused his anoxic brain injury; the bus was merely the situs of Kyle's seizure. However, plaintiff presented evidence that the movement of the bus caused Kyle to fall to its floor during a seizure, where his head became wedged between the bus seat and the bus floor, which resulted in Kyle's airway being cut off and his brain being deprived of oxygen. Further, plaintiff's evidence tended to establish that, because of the movement of the bus, Kyle's body remained upside down, with his body weight pressing on his head and neck so that his airway remained cut off for the extended period of time in which the bus was in motion.

Pursuant to MCL 500.3105(1), to recover PIP benefits, the claimed injury must arise out of, or be caused by, the operation or use of a motor vehicle as a motor vehicle. The causal connection between the injury and the use of the motor vehicle must be more than incidental, fortuitous, or "but for." See *Thornton*, 425 Mich at 659. That is, the involvement of the motor vehicle in the injury should be "directly related to its character as a motor vehicle." *Id*., quoting *Miller v Auto-Owners Ins Co*, 411 Mich 633, 640-641; 309 NW2d 544 (1981).

In this case, we agree with the trial court that a genuine issue of material fact existed as to whether Kyle's anoxic brain injury arose out of, or was caused by, the operation or use of the bus. In that regard, two bus videos were submitted to the trial court. Contrary to defendant's claim that Kyle's seizure caused him to fall to the floor of the bus, the bus video gave rise to a question of fact as to whether the movement of the bus caused Kyle to fall. Further, plaintiff's experts testified in their depositions that the movement of the bus caused Kyle to fall to the floor, in an inverted position, where he stayed because of the movement of the bus, which resulted in his airway being obstructed so that he suffered oxygen deprivation for an extended period of time—while the bus was in motion. Although plaintiff's experts agreed with defendant's experts that a seizure could cause aspiration and a lack of oxygen to the brain, plaintiff's experts concluded that Kyle's anoxic brain injury did not happen in that manner. Because defendant's and plaintiff's experts' deposition testimony supported different theories as to what caused Kyle's anoxic brain injury, i.e., positional asphyxia, aspiration, or status epilepticus, the trial court properly concluded that a genuine issue of material fact existed as to whether Kyle's injury "arose out of" the operation or use of the bus which precluded summary disposition. That is, a question of fact existed whether the connection between Kyle's injury and the operation or use of the bus as a motor vehicle was more than incidental, fortuitous, or "but for." See *Thornton*, 425 Mich at 659. It is well-established that the trial court may not determine findings of fact or weigh credibility in deciding a motion for summary disposition. *Oade*, 465 Mich at 265. Therefore, defendant's claim that its motions for summary disposition should have been granted is without merit.

### III. Jury Instructions

Next, defendant argues that the trial court's refusal to grant its requests for special jury instructions was erroneous. We disagree.

### A. Standard of Review

Claims of instructional error are generally reviewed de novo. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 8; 651 NW2d 356 (2002). A trial court's determination whether a standard instruction was applicable and accurate is reviewed for an abuse of discretion. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 223; 755 NW2d 686 (2008) (citation omitted). The trial court's decision regarding supplemental instructions is reviewed for an abuse of discretion, and will not be reversed unless failure to vacate the verdict would be inconsistent with substantial justice. *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008) (citation omitted). A determination based upon a legal issue is a question of law subject to de novo review. *Jackson v Nelson*, 252 Mich App 643, 647; 654 NW2d 604 (2002) (citation omitted). "Jury instructions should be reviewed in their entirety, not extracted piecemeal to establish error in isolated portions." *Bachman v Swan Harbour Ass'n*, 252 Mich App 400, 424; 653 NW2d 415 (2002). "[T]here is no error requiring reversal if, on balance, the theories of the parties and the applicable law were adequately and fairly presented to the jury." *Murdock v Higgins*, 454 Mich 46, 60; 559 NW2d 639 (1997).

### B.  Applicable Law

The trial court must instruct the jury on the applicable law and issues presented.  MCR 2.512(B)(2).  When requested by a party, a standard jury instruction must be given if it is applicable and accurately states the law, MCR 2.512(D)(2); *Chastain v Gen Motors Corp* (*On Remand*), 254 Mich App 576, 590; 657 NW2d 804 (2002).  A supplemental instruction need not be given if it would add nothing to an otherwise balanced and fair jury charge or "enhance the ability of the jury to decide the case intelligently, fairly, and impartially."  *Alpha Capital Mgt, Inc v Rentenback*, 287 Mich App 589, 629; 792 NW2d 344 (2010) (citation omitted).  A proposed supplemental instruction must be modeled as nearly as practicable after the style of the standard instructions and "must be concise, understandable, conversational, unslanted and nonargumentative."  MCR 2.512(D)(4); *Stoddard v Mfr Nat'l Bank of Grand Rapids*, 234 Mich App 140, 162-163; 593 NW2d 630 (1999).

### C.  Normal Use of Bus as a Motor Vehicle

First, defendant argues that the trial court erred when it refused defendant's request for a special jury instruction stating that "in order for an injury to be compensable, it must be foreseeably identifiable with the normal use of a motor vehicle as a motor vehicle."  The trial court denied defendant's request, holding that the applicable standard jury instruction, M Civ JI 35.02, sufficiently set forth the law consistent with MCL 500.3105(1).  Further, the point defendant was trying to make was adequately covered by that instruction and defendant's special instruction would be more confusing than helpful.  The court's decision did not constitute an abuse of discretion.  See *Guerrero*, 280 Mich App at 660.  The jury instructions repeated multiple times that the injury must have occurred while the bus was being used as a motor vehicle.  The given instruction, which followed the language of MCL 500.3105(1), adequately and fairly presented the applicable law to the jury.  See *Murdock*, 454 Mich at 60.  Further, the proposed special instruction added nothing to the balanced jury instruction given, was lengthy, and was confusing; thus, the trial court properly refused to give the proposed special instruction.  See MCR 2.512(D)(4); *Alpha Capital Mgt*, 287 Mich App at 629.

### D.  Dual Purpose Vehicle

Next, defendant argues that the trial court erred when it denied its request to instruct the jury that, if a vehicle has more than one function, the injury must arise out of the transportational function of the vehicle.  However, we agree with the trial court's conclusion that there was "no evidence that the bus was being used for any purpose other than to move students to school.  That is a transportation function."  In other words, the evidence did not support a dual purpose instruction; therefore, the trial court did not abuse its discretion when it denied defendant's request to give the proposed special instruction.  See *Jackson*, 252 Mich App at 647.

### E.  Causal Connection

Next, defendant argues that jury instruction pertaining to the concept of "arising out of" was erroneous because it stated that "some causal connection" was sufficient.  The instruction provided:

The term "arose out of" means that there must be a causal connection between the injury and the operation, use, ownership, or maintenance of a motor vehicle, which connection must be more than incidental, fortuitous, or but for. Proximate cause is not required; however, it is generally not sufficient that the motor vehicle is merely the site of the accident. If the motor vehicle is one of the causes, a sufficient causal connection exists even though there are other independent causes.

* * *

Where the injury is entirely the result of an independent cause in no way related to the use of the vehicle, the fact that the vehicle is the site of the injury will not suffice to bring it within the policy coverage.

When determining whether the injury arose out the use or operation of the motor vehicle, school bus, as a motor vehicle triggering an insurer's obligation to pay no-fault benefits, there must be some causal connection between the use of the motor vehicle and the injury. The connection between the use of operation of the vehicle and the accidental injury need not be the cause or even a substantial cause . . . [o]r even the only cause, as long as there is some causal connection.

This instruction properly instructed the jury regarding the requisite causal connection. The comments to M Civ JI 35.02 explain that "[i]f the motor vehicle is one of the causes, a sufficient causal connection exists even though there are other independent causes." In explaining the level of causation required, the trial court instructed that there must be "some" causal connection. This language comports with existing caselaw. Indeed the instruction given (some causal connection) is more restrictive than the "almost any causal connection" standard approved by this Court in *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578, 583-585; 751 NW2d 51 (2008), which has not been overruled by our Supreme Court.[2] See *McPherson v McPherson*, 493 Mich 294, 299; 831 NW2d 219 (2013). Therefore, defendant's argument is without merit.

## IV. Intervening Plaintiffs

Next, defendant argues that the trial court erred when it granted the hospitals' and Golden Rule's motions to intervene and denied defendant's motion for summary disposition in their regard. We disagree.

## A. Standard of Review

This Court reviews for an abuse of discretion a trial court's decision on a motion to intervene. *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 761; 630 NW2d 646 (2001). An abuse of discretion occurs when the trial court's decision is outside the range of principled

---

[2] See *Scott v State Farm Mut Auto Ins Co*, 483 Mich 1032-1033; 766 NW2d 273 (2009).

and reasonable outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The trial court's resolution of underlying questions of law, including the construction of statutes and court rules, is reviewed de novo. *Hill v L F Transp, Inc*, 277 Mich App 500, 507; 746 NW2d 118 (2008). "This Court reviews de novo a trial court's decision on a motion for summary disposition." *Gorman*, 302 Mich App at 115. Under MCR 2.116(C)(7), dismissal is appropriate if a claim is barred because of a statute of limitations.

## B. Applicable Law

MCR 2.209(B)(2) applies to permissive intervention and provides that, on timely application, a person may intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common." The trial court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id*. However, "[t]he rule for intervention should be liberally construed to allow intervention where the applicant's interests may be inadequately represented." *Neal v Neal*, 219 Mich App 490, 492; 557 NW2d 133 (1996). But "intervention may not be proper where it will have the effect of delaying the action or producing a multifariousness of parties and causes of action." *Precision Pipe & Supply*, *Inc v Meram Constr, Inc*, 195 Mich App 153, 157; 489 NW2d 166 (1992). Moreover, "[t]here should be considerable reluctance on the part of the courts to allow intervention after an action has gone to judgment and a strong showing must be made by the applicant." *Dean v Dep't of Corrections*, 208 Mich App 144, 150; 527 NW2d 529 (1994).

## C. Background

After trial, plaintiff filed a post-verdict motion for taxation of costs, interest, attorney fees, and entry of final judgment. Defendant opposed the motion, arguing that entry of judgment was premature before a hearing to determine the amount of medical expenses outstanding considering the amounts already paid to, and accepted by, the hospitals from Golden Rule and Medicaid. Defendant sought to reduce the amount of the jury award, arguing that it should not have to pay the medical bills that were paid by Golden Rule and Medicaid, and thus, that were not outstanding. But if it had to do so, defendant argued, it should only have to pay the reduced amounts the hospitals had accepted from other insurers rather than the full amount billed.

The hospitals filed a motion to intervene to protect their rights to recover the full amount of their charges, arguing that they accepted payment for medical services provided to Kyle from Medicaid and Golden Rule under the mistaken belief that no-fault benefits were not available. The trial court granted the hospitals' motion to intervene under MCR 2.209(B)(2), reasoning that Medicaid was entitled to repayment of the money it had paid for Kyle's medical bills—leaving Kyle responsible for the bills—and that the hospitals clearly had an interest in the no-fault award. Thereafter, Golden Rule filed a motion to intervene to protect its right to full reimbursement of the medical expenses it paid, which was granted.

### D. Untimely & Prejudicial

Defendant argues that the hospitals' and Golden Rule's applications to intervene were untimely. Several factors may be considered when determining if an application to intervene is timely. *Bradley v Milliken*, 828 F2d 1186, 1191 (CA 6, 1987).[3] In *Bradley*, the Court stated:

> Timeliness should be evaluated in the context of all relevant circumstances, such as the purpose of the motion to intervene, the length of time the applicant for intervention should have known of his interest in the case, whether the original parties would be prejudiced by further delays, whether there are any unusual circumstances which would bear on granting or denying the motion and to what stage the lawsuit has progressed. [*Id*.]

With regard to post-judgment interventions, our Supreme Court has explained:

> The question sometimes arises whether an intervention may be after final judgment. If it does not relate to the merits of the question, as where it is a proceeding to determine the validity of an attachment or whether specified property is subject thereto, the intervention need not delay the main action nor necessarily unsettle any judgment entered therein. Hence, in such case there is no reason why an intervention may be after, as well as before, final judgment[.]" [*School Dist of City of Ferndale v Royal Oak Twp Sch Dist No 8*, 293 Mich 1, 11; 291 NW 199 (1940) (quotation marks and citations omitted)].

In this case, the hospitals and Golden Rule clearly had an interest in the no-fault award. As a result of the verdict, defendant was found liable under the no-fault act for Kyle's medical expenses. Because Kyle was entitled to PIP benefits, he was "expressly precluded from qualifying as a medically indigent individual eligible for medical assistance under the state Medicaid program." *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 501-502; 274 NW2d 373 (1979); *Johnson v Mich Mut Ins Co*, 180 Mich App 314, 320-321; 446 NW2d 899 (1989). Accordingly, the Department of Community Health has the right of subrogation or reimbursement to the extent of the Medicaid benefits paid. *Workman*, 404 Mich at 503; see also MCL 400.106. And Golden Rule also mistakenly paid some of Kyle's medical bills under the assumption that no-fault benefits were not available. Thus, the hospitals' and Golden Rule's claims and the main action had "a question of law or fact in common," MCR 2.209(B)(2), as related to the amount awarded to Kyle for his medical expenses. Because Kyle was entitled to PIP benefits, the hospitals were entitled to "charge a reasonable amount" for services rendered, MCL 500.3157, and were not limited to contractual amounts or statutory amounts allowed for Medicaid benefits. See *Hicks v Citizens Ins Co of America*, 204 Mich App 142, 146; 514 NW2d 511 (1994) ("The fact that, with hindsight, Medicaid benefits were mistakenly paid on [the] plaintiff's behalf does not release [the] plaintiff's responsibility for the medical expenses incurred but not paid for, nor does it bind [the provider] to limit its claim to the statutory amount

---

[3] It is appropriate to look to the federal courts for guidance because MCR 2.209 is similar to FR Civ P 24. See *D'Agostini v Roseville*, 396 Mich 185, 188; 240 NW2d 252 (1976).

allowed for Medicaid benefits."); see also *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 384; 554 NW2d 49 (1996). Thus, the hospitals and Golden Rule had a clear interest in this matter that would not be adequately represented. See *Neal*, 219 Mich App at 492.

Defendant also argues that post-judgment intervention should not have been allowed because the intervenors sat on their rights. In that regard, defendant relies on this Court's holding in *Dean*, 208 Mich App 144, but that reliance is misplaced. In *Dean*, a judgment had already been entered by the trial court when the motions to intervene were filed. *Id*. at 150. Here, judgment had not been entered when the trial court allowed the hospitals and Golden Rule to intervene. And, unlike the intervening plaintiffs in *Dean*, who would "reap the benefits of a favorable judgment but would not be bound by an adverse judgment," *id*. at 151, the hospitals and Golden Rule would have been bound by an adverse judgment with regard to Kyle's medical expenses. And, here, the hospitals' and Golden Rule's motions to intervene were triggered by defendant's attempt to reduce the jury verdict award from the total amount of medical expenses that the jury deemed reasonable and necessary to the discounted amount the hospitals erroneously accepted from Medicaid and Golden Rule. See *Hicks*, 204 Mich App at 146.

Moreover, the hospitals' and Golden Rule's interventions did not relate to the merits of Kyle's claim that he was entitled to no-fault benefits and, thus, would not affect the jury verdict. See *Sch Dist of the City of Ferndale*, 293 Mich at 11. The intervening parties did not seek to affect the ultimate resolution of the main action; rather, as the trial court held, they filed their motions to intervene to address any potential reduction in the medical expenses awarded by the jury. And defendant agreed to resolve after trial its request for reduction of medical benefits as a result of prior payments by Medicaid and Golden Rule. As such, the intervening parties' motions to intervene to resolve that very issue would not further delay the proceedings. See *Precision Pipe & Supply*, 195 Mich App at 157. Thus, considering all relevant circumstances, we agree with the trial court that the motions to intervene were not untimely. See *Bradley*, 828 F2d at 1191.

We also reject the claim that granting the motions to intervene caused defendant to suffer "extreme prejudice." Defendant claims on appeal that it did not stipulate that the fees charged by the hospitals were reasonable and necessary and that it "relied on plaintiff's representations and the trial court orders that it would have a post-verdict hearing to challenge the charges." While defendant correctly states that it did not stipulate that the fees charged were reasonable and necessary, defendant ignores the trial court's holding that the stipulation did not provide for a hearing on the reasonableness of the medical charges after trial. Rather, the parties' pre-trial stipulation provided for a hearing on defendant's claim that the medical bills should be reduced to the amounts paid by Medicaid and Golden Rule because Kyle had not "incurred" the full amount that the hospitals charged. Defendant does not challenge the trial court's interpretation of the stipulation and order. Defendant did not contest the reasonableness and necessity of the medical bills at trial, as provided by the stipulation, and would be liable for those charges if the trial court rejected its "incurred" argument, regardless of whether the hospitals or Golden Rule were allowed to intervene. Thus, defendant cannot demonstrate that it was prejudiced by the trial court's decision to grant the hospitals' and Golden Rule's motions to intervene.

In summary, the trial court did not abuse its discretion by granting the hospitals' and Golden Rule's motions to intervene. See *Vestevich*, 245 Mich App at 761.

-13-

E.  Incurred Expense

Next, defendant argues that Kyle's jury award should be reduced because his medical bills were paid by Medicaid and Golden Rule; thus, Kyle did not "incur" the medical expenses. We disagree.

PIP benefits are payable for "allowable expenses." MCL 500.3107(1)(a). To be reimbursed for an "allowable expense," the plaintiff must establish that the charge for the service was reasonable, the expense was reasonably necessary, and the expense was incurred. *Spect Imaging, Inc v Allstate Ins Co*, 246 Mich App 568, 574; 633 NW2d 461 (2001). Here, defendant argues that, because Kyle's medical bills were mistakenly paid by other insurers, defendant could not be liable for those amounts. That is, according to defendant, as long as the bills were paid (although not by defendant) and did not remain outstanding, the "expense" for the medical services was not "incurred." This argument is without merit. As this Court held in *Shanafelt Allstate Ins Co*, 217 Mich App 625, 638; 552 NW2d 671 (1996), Kyle became liable for his medical expenses when he accepted medical treatment, i.e., the expense was "incurred." If the expense was reasonably necessary, and the charge reasonable, defendant became liable to pay it. The fact that other insurers mistakenly paid the expenses is irrelevant to the fact that Kyle "incurred" those expenses when he accepted medical treatment. And the other insurers are entitled to recover the amounts mistakenly paid on Kyle's behalf when defendant refused to pay those medical expenses. Further, to allow defendant to deny coverage and then avoid payment of any medical expenses—contrary to a finding of liability—simply because another insurer mistakenly paid some of those expenses contravenes the legislative purpose behind the no-fault act to provide an assured, adequate, and prompt recovery to persons injured in motor vehicle accidents. See *Perez v State Farm Mut Auto Ins Co*, 418 Mich 634, 647; 344 NW2d 773 (1984) (citation omitted).

Defendant, in the alternative, argues that the medical expenses Kyle "incurred" were only the amounts that other insurers paid on his behalf for those medical expenses—not the amounts the hospitals charged for the services. Therefore, the jury award for medical expenses should be reduced to those amounts previously paid by other insurers. But defendant's obligation to pay and Kyle's medical providers' rights to be paid arise from the no-fault act, and not some other statutory scheme or contractual agreement. See *Munson Med Ctr*, 218 Mich App at 384-385, citing *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 114; 535 NW2d 529 (1995). Pursuant to MCL 500.3157, Kyle's medical providers were entitled to "charge a reasonable amount for the products, services and accommodations rendered." That charge could "not exceed the amount . . . customarily charge[d] for like products, services and accommodations in cases not involving insurance." MCL 500.3157. Nowhere in the statute does it state that the contractual amounts agreed upon by the medical providers and health care insurers or the statutory amounts allowed for government benefits like Medicaid is binding on medical providers under the no-fault act. See *Hofmann*, 211 Mich App at 114. Thus, when medical providers accept reduced payments for their services from health care insurers or Medicaid for a patient who was wrongfully refused no-fault benefits, they are not then later prohibited from seeking the "reasonable amount" or customarily charged amount for their services from the no-fault insurer. To hold otherwise would make it profitable for a no-fault insurer to deny coverage, and then claim it only has to pay the more favorable rate accepted by medical providers from other insuring agencies, which is contrary to the legislative intent behind the no-fault act.

In support of its argument that it should only be liable for the reduced amounts other insurers mistakenly paid for Kyle's medical expenses, defendant relies on this Court's holding in *Bombalski*, 247 Mich App 536. That case is factually distinguishable. The *Bombalski* plaintiff was not *liable* for any medical bills because they had been paid in full by his health care provider; the plaintiff was merely seeking a double recovery. *Id*. at 543. Here, Kyle was not seeking a double recovery; rather, he was seeking to recover PIP benefits and the jury determined that he was entitled to those benefits. Similarly, defendant's reliance on *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003) is misplaced. In that case, the plaintiff sought PIP benefits for "future home modification expenses" which this Court held was not permissible because those "future" expenses had not been incurred, i.e., the plaintiff had not become liable for any costs. *Id*. at 483-484. Here, Kyle became liable for his medical expenses when he accepted medical treatment. Payment for "future expenses" was not at issue in this case.

Defendant also relied on this Court's unpublished opinions in *Coombs v State Farm Mut Auto Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued August 1, 1997 (Docket No. 197245), and *Nortwick v Auto-Owners Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued April 15, 2003 (Docket No. 237310). But these cases are inapposite. Here, there is no evidence that defendant reimbursed either Medicaid or Golden Rule for the payments they erroneously made to the hospitals for the medical services provided to Kyle. There is no evidence that Kyle was relieved of any legal obligation to pay the hospitals the amounts charged for medical services. In fact, Kyle was billed for a portion of the medical services provided when Golden Rule stopped payment after the policy lapsed in July 2009. And there is no evidence that defendant agreed to defend and indemnify Kyle for any claims made by the hospitals for any other amounts related to his injury. Further, this case is not an attempt by Kyle to receive a "windfall" or "double recovery" so that he could pocket the difference between the amounts paid by his insurers and the amounts charged by the hospitals. Instead, the verdict created a situation in which the hospitals in effect have not been paid for the services provided contrary to the no-fault act.

In summary, the trial court did not err by rejecting defendant's "incurred expense" argument and refusing to reduce the amount owed by defendant to zero or to the amount the hospitals erroneously accepted from Medicaid and Golden Rule for medical services provided. The trial court correctly held that defendant was responsible for the full amount of Kyle's incurred medical expenses and, thus, properly denied defendant's motion for summary disposition.

F. One-Year Back Rule

Finally, defendant argues that its motion for summary disposition should have been granted because the hospitals' and Golden Rule's claims were barred by the one-year-back rule, MCL 500.3145(1). Defendant argued that, because they were new parties to the action, they were not entitled to have their claims relate back to the date of plaintiff's complaint. The trial court properly rejected this argument.

MCL 500.3145(1) provides:

An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

Our Supreme Court has recognized that this statute "contains two limitations on the time for filing suit and one limitation on the period for which benefits may be recovered[.]" *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 207; 815 NW2d 412 (2012) (citation omitted). At issue in this case is the latter restriction, the one-year-back rule, which "limit[s] the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought." *Id*. at 203.

Generally, the one-year back rule applies to health care providers who bring an action against an insurer when the insured has not commenced an action against the insurer. See, e.g., *Henry Ford Health Sys v Titan Ins Co*, 275 Mich App 643, 647; 741 NW2d 393 (2007). Here, however, an action for recovery of personal protection insurance benefits was timely commenced by Kyle in May 2010. Following a jury verdict in plaintiff's favor, the hospitals filed a timely motion to intervene to address defendant's claim that the hospitals were not entitled to recover the amounts they charged for medical services, contrary to the jury verdict. Accordingly, for purposes of the one-year-back rule, the action for recovery of PIP benefits was already commenced—and was successful—at the time the hospitals sought to intervene. Therefore, defendant's argument that the hospitals' claims were barred by the one-year-back rule is without merit.

And the one-year-back rule did not bar Golden Rule's claim. Golden Rule paid an obligation owed to the hospitals by Kyle and is entitled to be reimbursed by defendant—the insurer liable for those medical expenses. See *Titan Ins v North Pointe Ins*, 270 Mich App 339, 343-344; 715 NW2d 324 (2006). Golden Rule, as subrogee of Kyle, acquired the same rights to recover against defendant as Kyle had to recover against defendant. See *Citizens Ins Co of America v American Community Mut Ins Co*, 197 Mich 707, 709; 495 NW2d 798 (1992). A subrogee stands in the shoes of the subrogor. *Yerkovich v AAA*, 461 Mich 732, 737; 610 NW2d 542 (2000). In this case, Golden Rule was subrogated to plaintiff's claim, which was timely filed under MCL 500.3145(1); thus, the one-year back rule did not bar Golden Rule's action.

In summary, the trial court did not abuse its discretion by granting the motions to intervene and properly denied defendant's motion for summary disposition with regard to the hospitals' and Golden Rule's claims.

Affirmed. Plaintiff and intervening plaintiffs are entitled to costs as prevailing parties. MCR 7.219.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter